U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 3 0 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL BOHANNAN                §
                                §
          Plaintiff,            §
                                §
VS.                             §   NO. 4:11-CV-299-A
                                §
WESLEY GRIFFIN,                 §
                                §
          Defendant.            §

MEMORANDUM OPINION
and
ORDER

On December 3, 2015, the court sua sponte created a motion
for summary judgment by an order that set forth the grounds of
the motion and explained pertinent summary judgment principles
and legal principles applicable to grounds of the motion.  Doc.
249 at 4-13.[1]  The court gave each party until 2:00 p.m. on
January 19, 2016, to file a response to the summary judgment
grounds.

Since December 3, 2015, two extensions of time for a
response have been ordered, the first extending the deadline to
March 2, 2016, and the second extending the deadline to May 27,
2016.  Docs. 262 & 325 at 3.  Defendant, Wesley Griffin,
("Griffin") filed his responsive summary judgment documents on

---

[1]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:11-CV-299-A.

May 25, 2016.[2]   Docs. 346, 347, 348.   Bohannan did not file a

responsive document of any kind by the May 27, 2016 deadline, and

has not sought to file one since then.   By order issued May 25,

2016, the court gave Bohannan a deadline of June 27, 2016, for

the filing of a reply to the summary judgment documents filed by

Griffin on May 25, 2016.   The court has not received anything

from Bohannan that would constitute such a reply.

I.

## Nature of the Litigation

The live pleading of plaintiff, Michael Bohannan,

("Bohannan") is the document he filed August 7, 2014, titled

"Plaintiff's Refiled Third Amended Complaint."   Doc. 115.   He

alleged that all his claims are based on events that occurred

while he was at the Fort Worth Community Correctional Facility

("FWCCF") in early 2009 pursuant to a civil commitment order.

Id. at 3, ¶ 5.   The record discloses that he was under

---

[2]With authority from the court, Doc. 325 at 3 & 5, Griffin's responsive summary judgment documents were in the form of a defense motion for summary judgment, raising exactly the same grounds the court had identified as summary judgment grounds in the December 3, 2015 order, Doc. 347 at ii-iii, 19, 28, 31, 47, 52, 53, 56, 58, 61, 62, & 63.

supervision of a State of Texas agency known as the Council on Sex Offender Treatment ("CSOT")[3] at that facility during the first three months of the year 2009 pursuant to a sexually violent predator adjudication against him in January 2009, when he was civilly committed as a sexually violent predator under the authority of chapter 841 of the Texas Health & Safety Code.[4] Griffin was employed by CSOT as Bohannan's case manager at the FWCCF.

---

[3]In 2011 the supervising agency for sexually violent predators under chapter 841 of the Texas Health & Safety Code became the Office of Violent Sex Offender Management, instead of Council on Sex Offender Treatment, see Acts 2011, 82nd Leg. ch. 1201 (S.B. 166), § 3, eff. September 1, 2011, and in 2015 Texas Civil Commitment Office became the supervisory agency, see Acts 2015, 84th Leg. ch. 845 (S.B. 746), § 1, eff. June 1, 2015.

[4]In July 2010, a Texas court of appeals at Beaumont reversed and remanded Bohannan's sexually violent predator case for a new trial. See In re Commitment of Bohannan, 379 S.W.3d 293 (Tex. App.--Beaumont 2010), aff'd, 388 S.W.3d 296 (Tex. 2012). On August 31, 2012, the Texas Supreme Court affirmed the Beaumont court's July 2010 ruling. Bohannan, 388 S.W.3d at 307. The United States Supreme Court denied his petition for writ of certiorari. 133 S. Ct. 2746 (2013). So far as the court can determine there has not been a new trial of the sexually violent predator charges against Bohannan, with the consequence that he is not now, and has not been since his judgment of civil commitment was reversed, subject to the form of civil commitment about which Bohannan complained in his pleading.
    The court's information is that Bohannan is now serving a life sentence of imprisonment resulting from his violations of terms of his civil commitment as a sexually violent predator. See Bohannan v. State, No. 09-13-00090-CR, 2014 WL 5490936 (Tex. App.--Beaumont Oct. 29, 2014). He has filed with the Texas Court of Criminal Appeals a petition for discretionary review of the October 29, 2014 judgment of the Beaumont Court of Appeals, and as of the date of the writing of this memorandum opinion and order there has been no ruling on that petition.

Bohannan's alleged causes of action against Griffin, individually,[5] are that:

First Claim:

Griffin unreasonably interfered with his freedoms of speech, association, and religion, Doc. 115 at 6-9, ¶¶ 12-30;

Second Claim:

Griffin was deliberately indifferent to his serious medical needs, id. at 9-12, ¶¶ 31-43, 46;

Third Claim:

Griffin retaliated against him, and maliciously prosecuted him, because of his use of CSOT grievance process and his exercise of his right of access to the courts, id. at 12-21, ¶¶ 47-58, 61-63, 80, 85-108;

Fourth Claim:

Griffin infringed on his Fifth Amendment rights by requiring him to self-report any of his rules violations to Griffin and the treatment provider and to undergo regular polygraph examinations, id. at 21-24, ¶¶ 116-131;

Fifth Claim:

By seizing his legal papers, and causing them to become disorganized, Griffin violated Bohannan's access-to-court rights, id. at 24-27, ¶¶ 141-157;

---

[5]Whatever claims Bohannan was asserting against Griffin in his official capacity were dismissed by order and judgment signed October 29, 2015.  Docs. 231 & 232.

4

<u>Sixth Claim</u>:

Griffin committed the state law torts of false arrest and/or false imprisonment against Bohannan, <u>id.</u> at 28, ¶ 183; and

<u>Seventh Claim</u>:

Griffin committed the state law tort of malicious prosecution against Bohannan, <u>id.</u> at 29, ¶¶ 184-85.

The First through Fifth Claims are alleged violations of Bohannan's rights under the United States Constitution that were brought pursuant to 28 U.S.C. § 1983, and the Sixth and Seventh are state law claims over which the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The court has concluded for the reasons given below that Griffin is entitled to summary judgment as to each of Bohannan's claims and that judgment should be granted denying Bohannan any relief from Griffin.

II.

<u>Grounds of the Motion</u>

The grounds of the motion for summary judgment are as follows:

<u>First Ground</u>:  Bohannan is unable to adduce probative evidence that Griffin unreasonably interfered with Bohannan's freedom of speech, association, or religion.

Second Ground:  Bohannan is unable to adduce probative evidence that Griffin was deliberately indifferent to Bohannan's serious medical needs.

Third Ground:  Bohannan is unable to adduce probative evidence that Griffin retaliated against Bohannan, or maliciously prosecuted him, because of Bohannan's use of the CSOT grievance process or Bohannan's exercise of his rights of access to the courts.

Fourth Ground:  Bohannan is unable to adduce probative evidence that Griffin infringed on Bohannan's Fifth Amendment rights by requiring him to self-report any of his rules violations to Griffin and the treatment provider or to undergo regular polygraph examinations.

Fifth Ground:  Bohannan is unable to adduce probative evidence that Griffin seized Bohannan's legal papers, and caused them to become disorganized, in violation of Bohannan's access-to-court-rights.

Sixth Ground:  Assuming, arguendo, that Griffin engaged in conduct of the kinds of which Bohannan complains in his First through Fifth Claims, Bohannan would be unable to establish that Griffin's conduct in any of those instances violated a right of Bohannan that was clearly established at the time Griffin engaged in the conduct.

Seventh Ground:  Bohannan is unable to adduce probative evidence that Griffin committed the state law tort of false arrest and/or false imprisonment against Bohannan.

Eighth Ground:  Bohannan is unable to adduce probative evidence that Griffin committed the state law tort of malicious prosecution against Bohannan.

Ninth Ground:  Assuming, arguendo, that Griffin engaged in conduct of a kind of which Bohannan complains by his Sixth and Seventh Claims, the evidence establishes without genuine dispute that in each instance Griffin acted in good faith in the performance

of functions under Chapter 841 of the Texas Health &
Safety Code as an employee or officer of CSOT and as a
person providing services under such chapter.

Tenth Ground:  Assuming, arguendo, that Griffin
engaged in conduct of a kind of which Bohannan
complains by any of Bohannan's claims, Bohannan is
unable to adduce probative evidence that he suffered
any compensable harm or damage by reason of any of that
conduct.

Eleventh Ground:  The evidence establishes without
genuine dispute that each and all of Bohannan's claims
are barred by limitations.

See Doc. 249 at 11-13.

III.

Relevant Legal Standards and Principles

A.   Pertinent Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides

that the court shall grant summary judgment on a claim or defense

if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  The movant bears the initial burden of pointing out to

the court that there is no genuine dispute as to any material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

The movant can discharge this burden by pointing out the absence

of evidence supporting one or more essential elements of the

nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[6]  Celotex Corp., 477 U.S. at 323.  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B.   Legal Principles Pertinent to Defensive Issues Included in the Grounds of the Motion for Summary Judgment

1.   The Qualified Immunity Defense

The qualified immunity defense has potential applicability to the First through Fifth Claims.  That defense embraces the factors of whether Griffin engaged in the conduct about which Bohannan complains, whether by doing so Griffin violated Bohannan's constitutional rights, and whether the constitutional rights allegedly violated were clearly established at the time.

Griffin, as an employee or official of an agency of the State of Texas performing discretionary functions, is entitled to assert the qualified immunity defense as to plaintiff's § 1983

---

[6]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

claims.  In <u>Fraire v. City of Arlington</u>, the Fifth Circuit

explained the qualified immunity defense:

> Substantively, qualified immunity shields government
> officials performing discretionary functions from civil
> damages liability as long as their actions could
> reasonably have been thought consistent with the rights
> they are alleged to have violated.  Whether a defendant
> asserting qualified immunity may be personally liable
> turns on the objective legal reasonableness of the
> defendant's actions assessed in light of clearly
> established law.  The Supreme Court explained that when
> a plaintiff invokes a clearly established right, the
> appropriate inquiry is whether the contours of the
> right are sufficiently clear that a reasonable official
> would understand that what he is doing violates the
> right.  If reasonable public officials could differ on
> the lawfulness of the defendant's actions, the
> defendant is entitled to qualified immunity.  Thus,
> even when a defendant's conduct actually violates a
> plaintiff's constitutional rights, the defendant is
> entitled to qualified immunity if the conduct was
> objectively reasonable.

957 F.2d 1268, 1273 (5th Cir. 1992)(internal quotation marks,

brackets, and footnotes omitted).  As the Supreme Court explained

in <u>Hunter v. Bryant</u>:

> The qualified immunity standard gives ample room for
> mistaken judgments by protecting all but the plainly
> incompetent or those who knowingly violate the law.  This
> accommodation for reasonable error exists because officials
> should not err always on the side of caution because they
> fear being sued.

502 U.S. 224, 229 (1991) (internal quotation marks and citations

omitted) (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 343, 341 (1986);

<u>Davis v. Scherer</u>, 468 U.S. 183, 196 (1984)).

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. at 341; Fraire v. City of Arlington, 957 F.2d at 1273. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in

judgment does not cause an officer to lose his qualified immunity defense. Hunter, 502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

Even if a plaintiff has alleged the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if there is no evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

There are two aspects to the qualified immunity inquiry. One is a decision as to whether the facts alleged and shown make out a violation of a constitutional right, and the other is whether the right at issue was clearly established at the time of the defendant's alleged conduct. In Pearson v. Callahan, the Supreme Court held that district courts are authorized to determine the order of deciding the two aspects. 555 U.S. 223, 242 (2009). Inasmuch as the qualified immunity defense creates "entitlement [to] immunity from suit rather than a mere defense to liability . . . , it is effectively lost if a case is erroneously permitted to go to trial." Id.

2.   <u>The Defense Based on Section 841.147 of the Texas Health</u>
     <u>& Safety Code</u>

At all relevant times during the first three months of 2009,
Bohannan, having been judicially determined to be subject to civil
commitment as a sexually violent predator, was under the
supervision of CSOT.   Griffin, an employee of CSOT, had immunity
from liability for good faith conduct pursuant to the following
parts of section 841.147 of the Texas Health & Safety Code:

> The following persons are immune from liability for good
> faith conduct under this chapter:
>
> (1) an employee or officer of . . . the council;
>
> .   .   .   .
>
> (4) a person providing, or . . . appointed . . . to
> perform, a tracking service or another service under
> this chapter.

Acts 2007, 80th Leg., ch. 1219, § 9, eff. Sept. 1, 2007; Tex.
Health & Safety Code § 841.147(1) & (4)(Vernon 2010).[7]

The section 841.147 immunity from liability defense has
potential applicability to the state law claims described above as
Bohannan's Sixth and Seventh Claims.

---

[7]The word "council" used in section 841.147(1) in 2009 had reference to CSOT.  <u>See</u> Acts 2003,
78th Leg., ch. 347, § 16, eff. Sept. 1, 2003.

3.   <u>The Statute of Limitations Ground</u>

    a.   <u>The § 1983 Claims</u>

The statute of limitations applicable to Bohannan's § 1983 claims is the two-year limitations period contemplated by Texas law.  <u>See</u> <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 576 (5th Cir. 2001).  Although Texas law governs the limitations period, federal law governs when a § 1983 claim accrues.  <u>Id.</u>  "Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."  <u>Id.</u> (internal quotation marks and brackets omitted)(quoting <u>Russell v. Bd. of Trustees</u>, 968 F.2d 489, 493 (5th Cir. 1992)).  "A plaintiff's awareness encompasses two elements:  (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."  <u>Id.</u> (internal quotation marks omitted)(quoting <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 516 (5th Cir. 1995)("<u>Piotrowski I</u>")).  "Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further."  <u>Id.</u> (internal quotation marks omitted)(quoting <u>Piotrowski I</u>, 51 F.3d at 516).

    b.   <u>The State Law Claims</u>

The limitations periods applicable to Bohannan's state law claims (the torts of false arrest and/or false imprisonment and

malicious prosecution) are governed by Texas law.  A suit for
malicious prosecution must be brought no later than one year after
the day the cause of action accrues.  Tex. Civ. Prac. & Rem. Code
§ 16.002(a).  See also White v. Cole, 880 S.W.2d 292, 294-95 (Tex.
App.--Beaumont 1994, writ denied).  The malicious prosecution
cause of action accrues upon termination of the criminal
prosecution in favor of the plaintiff.  See Sullivan v. O'Brien,
85 S.W.2d 1106, 1115 (Tex. Civ. App.--San Antonio 1935, err.
ref'd); see also Leal v. Am. Nat'l Ins. Co., 928 S.W.2d 592, 596-
97 (Tex. App.--Corpus Christi 1996, writ denied).  If the criminal
prosecution against the plaintiff has been successful, the
plaintiff has no basis for a malicious prosecution claim.

The state law torts of false arrest and/or false imprisonment
are governed by the two-year statute of limitations prescribed by
section 16.003 of the Texas Civil Practice & Remedies Code.
White, 880 S.W.2d at 295.

IV.

Analysis

A.   Introduction

The legislative findings that led to the enactment of chapter
841 of the Texas Health & Safety code, titled "Civil Commitment of
Sexually Violent Predators," were as follows:

> The legislature finds that a small but extremely
> dangerous group of sexually violent predators exists and

15

that those predators have a behavioral abnormality that
is not amenable to traditional mental illness treatment
modalities and that makes the predators likely to engage
in repeated predatory acts of sexual violence.   The
legislature finds that the existing involuntary
commitment provisions of Subtitle C, Title 7, are
inadequate to address the risk of repeated predatory
behavior that sexually violent predators pose to
society.   The legislature further finds that treatment
modalities for sexually violent predators are different
from the traditional treatment modalities for persons
appropriate for involuntary commitment under Subtitle C,
Title 7.   Thus, the legislature finds that a civil
commitment procedure for the long-term supervision and
treatment of sexually violent predators is necessary and
in the interest of the state.

Tex. Health & Safety Code § 841.001 (Vernon 2010).   The Supreme

Court has upheld state and civil commitment statutes comparable to

Texas's.   See United States v. Comstock, 560 U.S. 126

(2010)(upholding the federal civil commitment statute); Kansas v.

Crane, 534 U.S. 407 (2002)(upholding the Kansas sexually violent

predator statute); Kansas v. Hendricks, 521 U.S. 346 (1987)(same);

Seling v. Young, 531 U.S. 250 (2001)(same for Washington); see

also Smith v. Doe, 538 U.S. 84 (2003)(upholding Alaska's sex

offender registration law).[8]

The chapter 841 definition of a sexually violent predator is

"a repeat sexually violent offender [who] suffers from a

---

[8]Texas courts also have upheld the state civil commitment statute for sexually violent predators.
See Green v. State, 219 S.W.3d 84, 90-91 (Tex. App.--Houston [1st Dist]. 2006, no. pet.); In re
Commitment of Fisher, 164 S.W.3d 637 (Tex. 2005); Adams v. State, 222 S.W.3d 37, 55-58 (Tex. App.--
Austin 2005, pet. ref'd); In re Commitment of Shaw, 117 S.W.3d 520, 524-25 (Tex. App.--Beaumont
2003, pet. ref'd); In re Commitment of Mullens, 92 S.W.3d 881, 883-84 (Tex. App.--Beaumont 2002,
pet. denied); see also Petersimes v. State, No. 05-10-00227-CR, 2011 WL 2816725 (Tex. App.--Dallas
July 19, 2011, pet. ref'd); Beasley v. Molett, 95 S.W.3d 590 (Tex. App.--Beaumont 2002, pet. denied);.

behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." In re Commitment of Bohannan, 388 S.W.3d 296, 298 (Tex. 2012); Tex. Health & Safety Code §§ 841.002(9) & 841.003(a)(Vernon 2010). The term "behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Bohannan, 388 S.W.3d at 298; Tex. Health & Safety Code § 841.002(2)(Vernon 2010). A person found to be a sexually violent predator in a civil court proceeding must be ordered committed to outpatient treatment and supervision. Bohannan, 388 S.W.3d at 298; Tex. Health & Safety Code § 841.081(a)(Vernon 2010).

The Texas Supreme Court described the conduct of Bohannan that led to the adjudication in 2009 that he is a sexually violent predator:

> In September 1982, Michael Wayne Bohannan, then 26, married, and employed as a machinist, rode his bicycle past K.C.'s home several times and watched her inside through a window. One evening, he donned a ski mask and carrying a large knife, entered the home through the rear door, walked down the hallway past a room in which a child was sleeping, and entered K.C.'s bedroom. She was lying on the bed, reading a newspaper. Bohannan forced her to perform oral and vaginal sex, then left. Looking back on it, Bohannan testified in this case that he thought he would get some satisfaction or self-

fulfillment out of raping K.C., and in some way, he
expected K.C., 27, to "like being raped".

Some three weeks later, Bohannan was driving around
on his lunch break when he saw P.H., 27, enter her home.
He stopped, put on his ski mask, picked up his ski knife,
and walked through the front door.  P.H. was with a
group of children, whom Bohannan made her move to
another room.  He then took P.H. to her bedroom and
forced her to perform oral and vaginal sex.  He now
recalls, as before, he thought he would get some
satisfaction from raping P.H., "maybe . . . feel more of
a man".

Bohannan was apprehended and in 1983 pleaded guilty
to two counts of aggravated rape with a deadly weapon,
and was sentenced to 25 years' imprisonment.  Court
papers suggest that he committed a third rape for which
he was not charged, but Bohannan denies it.

In 1991, Bohannan was released on mandatory
supervision.  In April 1992, he was charged with
attempting to kidnap a nine-year-old girl in a K-Mart,
and in February 1993, he pleaded guilty, though he now
denies he committed any crime.  His mandatory
supervision was revoked and he was returned to prison.

In 1998, Bohannan was again released on mandatory
supervision, and in 2000 he moved to South Carolina to
live with his mother.  While there, he was convicted of
exposing his genitals to an eight-year-old girl in a toy
store and sentenced to three years' imprisonment.
Bohannan denies that the allegations were true.  In
2002, he was returned to prison in Texas.

In 2004, Bohannan was released on mandatory
supervision a third time.  But in 2006, his release was
again revoked, this time for viewing child pornography
on a computer in a county law library.  He was enrolled
in sex offender therapy at the time.  Bohannan denies
that the charges were true.

In re Commitment of Bohannan, 388 S.W.3d at 299-300.

The handbook that was provided to Bohannan at the beginning of his CSOT supervision described the mission and goal of the Outpatient Sexually Violent Predator Treatment Program ("OSVPTP") as follows:

> Mission -- The Outpatient Sexually Violent Predator Treatment Program (OSVPTP) provides intensive monitoring and cognitive behavioral sex offender treatment.
>
> Goals -- Maintain community safety by intensive treatment and supervision of the SVP. The goal of the program is to reduce the individual SVP's potential to reoffend to the point that the SVP can be assembled into the public.

Doc. 348 at 138. The Handbook went on to explain to Bohannan that:

- There is only one goal of sex offender treatment: No More Victims! Everything that is done in sex offender treatment is done to ensure that you will have No More Victims.
- The goal of No More Victims has several important implications for sex offender treatment:

  1. The treatment provider's primary client is the community.
  2. Given that the goal of treatment is No More Victims, if you are failing in treatment, the chances are that you are also creating more victims. If you fail in treatment, you will be viewed as a threat to the community. An attempt will be made to remove you from the community.
  3. To help you reach the goal of No More Victims, the treatment provider must coordinate with and use collateral support: supervising officer, your family, friends, coworkers and others.

Id. at 139.

19

As a civilly committed person, Bohannan was subject to the care of his case management team, which consisted of his case manager, Griffin, as the chairperson; his sex offender treatment provider, Ezio Leite ("Leite"); and his parole officer. Id. at 144-45, 172. To put in context the conduct of CSOT and Griffin during the first three months of 2009 when Bohannan was housed at FWCCF, the factors mentioned above are to be considered. All of those factors bear on the appropriateness of the nature and degree of supervision CSOT, acting through Griffin and its other employees, exercised over Bohannan in early 2009.

Griffin's summary judgment evidence, as contained in the appendix he filed May 25, 2016, provides adequate explanations of all Griffin's conduct of which Bohannan complains. Doc. 348. The court is satisfied that none of Bohannan's claims against Griffin survive an analysis that properly considers the relevant standards and principles mentioned above and the summary judgment evidence.

B.   Bohannan's § 1983 Claims

Section 1983 is not a source of substantive rights, but merely provides a method of vindicating federal rights conferred elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994). To state a claim for relief under § 1983, the plaintiff must allege that an individual acting under color of state law caused the deprivation

20

of a specific right secured by the Constitution or laws of the United States. Id.; West v. Atkins, 487 U.S. 42, 48 (1988).

1. Griffin's Alleged Unreasonable Interference With Bohannan's Freedoms of Speech, Association, and Religion

Bohannan's First Claim is that Griffin unreasonably interfered with his freedoms of speech, association, and religion. Doc. 115 at 6-9, ¶¶ 12-30. The gist of this claim is that Griffin had control over whether to approve the persons with whom Bohannan had contact and that he did not approve anyone other than Bohannan's mother and other ex-felons/parolees who came into the FWCCF and conducted NA meetings, and all the parolees housed in the FWCCF.

A prisoner[9] need only be afforded a reasonable opportunity to exercise religious freedom. Davis v. Wall, 50 F.3d 1033 (5th Cir. 1995). To establish a claim for violation of his right to practice religion under § 1983, Bohannan must show that he was completely denied the right to practice his religion or that the restrictions or prohibitions placed on the practice of his religion were not rationally related to the achievement of valid penological goals. Hines v. Graham, 320 F. Supp. 2d 511, 522 (N.D. Tex. 2004). There

---

[9]The court recognizes that Bohannan, as a person ordered under supervision as a sexually violent predator, was not a "prisoner" as that word most frequently is used; but, the court considers appropriate to rely on legal authorities involving rights of and duties to prisoners as providing a reasonable analogy to the statutory supervision imposed on a sexually violent predator. Lawful confinement brings about the necessary withdrawal or limitations of many privileges and rights. See Overton v. Bazzetta, 539 U.S. 126, 131 (2003). Such a person does not retain rights inconsistent with lawful confinement. Id.

is no support in the record for a finding that there was such a
denial.

As for the claims regarding freedom of speech and
association, the test is whether the restrictions are reasonably
or rationally related to the purposes for which Bohannan was
committed. See Chriceol v. Phillips, 169 F.3d 313, 316 (5th Cir.
1999); see also Allen v. Seiler, No. 4:12-CV-414-Y, 2013 WL 357614
at *5 (N.D. Tex. Jan. 30, 2013), aff'd, 535 F. App'x 423 (5th Cir.
2013). The court considers four factors: (1) whether the
restriction has a logical connection to the legitimate government
interests invoked to justify it; (2) whether there are alternative
means of exercising the rights that remain open to inmates; (3)
the impact that accommodation of the asserted constitutional
rights will have on other inmates, guards, and prison resources;
and (4) the presence or absence of ready alternatives that fully
accommodate the prisoner's rights at a de minimus cost to valid
penological interests. Chriceol, 169 F.3d at 316.

Evidence in the summary judgment record establishes that
Griffin's alleged interference with Bohannan's freedoms of speech
and association were all reasonable actions that Griffin took
pursuant to CSOT regulations and requirements and rules and
conditions to which Bohannan assented. Doc. 348 at 172-174. All
had a rational relationship to the factors CSOT had to consider in

22

its supervision of the sexually violent predators for whom it has responsibility. <u>Allen</u>, 2013 WL 357614 at *5. The summary judgment record shows that all four factors to be considered favor the nature and level of supervision exercised by CSOT. Worthy of note is that Bohannan's supervision requirements included the following:

> 10. I understand that any mail addressed to me will be reviewed by the case manager or facility personnel to determine if the contact has been approved by the case manager and treatment provider, excluding legal/governmental mail.

> 11. I shall not have any contact or cause to be contacted with family members, casual relations, or friends unless approved by my Case Manager and Treatment Provider.

> . . . .

> 12. I understand that family members may be required to submit to a criminal background. I agree to allow family members to attend trainings or meetings conducted by the Case Manager and Treatment Provider. I understand that I may not be allowed to have contact with family members or contact with family members may be suspended, unless the family members have completed counseling required by the Case Manager or Treatment Provider.

Doc. 348 at 6-7, ¶¶ 10, 11, & 12. Bohannan certified on January 26, 2009, that the above-quoted supervision requirements had been read and explained to him and that he fully understood and agreed to abide by them. <u>Id.</u> at 7.

The record does not contain evidence that would support a conclusion that Griffin violated Bohannan's constitutional rights

as to any of the elements of Bohannan's First Claim.  Much less is
there any evidence in the record that would support a conclusion
that Griffin engaged in any conduct that violated any
constitutional right of Bohannan relative to speech, association,
and religion that was clearly established at the time of the
conduct.  Thus, even if there had been a constitutional violation,
Griffin had qualified immunity as to his conduct.

Moreover, the summary judgment record indicates that the
conduct about which Bohannan complains in his First Claim occurred
within a short period of time after his placement at the FWCCF in
January 2009, more than two years before Bohannan filed this
action on March 30, 2011.  Thus, a limitations bar provides a
further reason why Bohannan cannot prevail on his claim that he
was deprived of his constitutional rights of freedom of speech,
association, and religion.

2.    The Summary Judgment Evidence Does Not Support
      Bohannan's Second Claim That Griffin Was Deliberately
      Indifferent to His Serious Medical Needs

Bohannan's Second Claim is that Griffin was deliberately
indifferent to his serious medical needs in that Griffin refused
to allow Bohannan to take his medications with him when he was
taken into custody by the criminal authorities.  Doc 115 at 9-12,
¶¶ 31-43, 46.  Deliberate indifference requires that Griffin both
know of and disregard an excessive risk to Bohannan's health or

24

safety. He "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference requires the unnecessary and wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Wantonness is defined as:

> the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.

Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)(quoting 30 American and English Encyclopedia of Law 2-4 (2d ed. 1905)). Allegations of malpractice and negligence do not provide a basis in law for § 1983 lawsuits, and such claims should be dismissed as frivolous. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Bohannan failed to adduce any evidence that would suggest that a decision by Griffin to deliver Bohannan's property, including his medication, to the officers who took Bohannan into custody on March 31, 2009, was inappropriate. Such an action on Griffin's part would seem to be perfectly normal and accepted as Bohannan was being transferred from the custody of CSOT to the custody of the criminal authorities.

25

Nothing in the summary judgment record would support a finding that thereafter Griffin had anything to do with whether Bohannan was given possession of his medication or otherwise provided appropriate medications. Much less is there anything in the summary judgment record that would support a conclusion that Griffin engaged in any conduct that violated any constitutional right of Bohannan as to his medical needs <u>that was clearly established at the time of the conduct</u>. Thus, even if there had been a constitutional violation, Griffin had qualified immunity as to his conduct.

> 3.   <u>There Is No Summary Judgment Evidence Raising an Issue That Griffin Retaliated Against Bohannan</u>

Bohannan's Third Claim is that Griffin retaliated against him for using the grievance process and for exercising his right of access to the courts. Doc 115 at 12-21, ¶¶ 47-58, 61-63, 80, 85-108. The elements of a retaliation claim are (1) a specific constitutional right, (2) the defendant's intent to retaliate based on the exercise of that right, (3) a retaliatory adverse act, and (4) causation. <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir. 1999). Filing a grievance is a constitutionally protected activity. <u>Id.</u> at 325.

At the heart of the retaliation claim are complaints by Bohannan of reports that were made of his apparent violations of CSOT's global positioning tracking requirements for persons

adjudicated as sexually violent predators.  Bohannan's supervision

plan included CSOT's Global Positioning Tracking Service

Requirements for miniature tracking devices ("MTD"), which started

with the following agreement on Bohannan's part:

> I agree that I will be required to wear an electronic
> monitor bracelet and carry a miniature tracking
> device (MTD) twenty-four (24) hours per day, seven (7) days per
> week.  I understand that the global positioning
> satellite equipment will monitor my location.  I
> understand that all activities will be monitored by
> phone calls, surveillance, and personal visits by
> representatives of CSOT.  Such visits may be random and
> at any time.

Doc. 348 at 8, ¶ 1.[10]  On January 26, 2009, Bohannan certified that

those requirements had been read and explained to him, that he

fully understood them, and that he agreed to abide by the

requirements.  Id.  The requirements contained detailed agreements

by Bohannan relative to things he should or should not do in

reference to the tracking device.  Id.  When Bohannan arrived at

FWCCF in January 2009, he participated in a new arrival

orientation related to the use of the GPS equipment and proper

placement of the MTD in the charging stand.  Id. at 17.  At that

time a Pro Tech GPS bracelet and an MTD were installed on Bohannan

---

[10]The use of a tracking device to restrict the freedom of a sexually violent predator "satisfies a legitimate non-punitive government objective of protecting society from what the Legislature has determined the risk of repeated predatory behavior."  In re Commitment of Shaw, 117 S.W.3d 520, 524 (Tex. App.--Beaumont 2003, pet. denied)(internal quotation marks omitted).

and were determined by Griffin to be operating and functional. Id. at 18.

Thereafter, Griffin created CSOT incident reports in which he made known that Bohannan violated GPS Supervision Requirements as well as other supervision requirements to which Bohannan had agreed. At pages 36-47 of Griffin's brief in support of the motion for summary judgment he provided a detailed, and what appears to be an accurate, description of the contents of the summary judgment record bearing on those and related matters pertinent to the retaliation claim. The court sees no need to repeat those details here. The court agrees with Griffin that there is no probative summary judgment evidence that Griffin retaliated against Bohannan for any grievance Bohannan filed against Griffin or for anything else Bohannan did.

Much less is there any evidence that would support a conclusion that Griffin did anything in response to conduct of Bohannan that violated any constitutional right of Bohannan to be free of retaliation that was clearly established at that time. Thus, even if there had been a constitutional violation, Griffin had qualified immunity as to his conduct.

4.    The Summary Judgment Record Does Not Support Bohannan's
      Claim That His Constitutional Rights Against Self-
      Incrimination Were Violated

Bohannan's Fourth Claim is that Griffin infringed on his

Fifth Amendment rights[11] by requiring him to self-report any rules

violations and to undergo polygraph examinations.  Doc 115 at 21-

24, ¶¶ 116-31.  As the Fifth Circuit has noted, in order to assert

a Fifth Amendment claim, Bohannan must allege (1) that his

statements were compelled either because he raised his Fifth

Amendment privilege and was denied it, or because he could not

have raised it without facing a penalty, and (2) that his

statements were used in a subsequent prosecution.  Bohannan v. Doe,

527 F. App'x 283, 296 (5th Cir. 2013).  The summary judgment

record does not suggest that either of those elements exists.

On January 26, 2009, Griffin reviewed, with Bohannan, all of

his civil commitment requirements, including the following

Standard Requirements of the Treatment Program:

33.  I shall be required to take polygraph examinations.
     I agree to use a polygrapher I am referred to by
     the Treatment Provider.  I agree to attend the
     polygraph session only after the Treatment Provider
     has submitted the questions to the polygrapher.  I
     understand that I may have to continue to take
     polygraph examinations until the Treatment Provider
     is satisfied with the results.  I understand that

---

[11]The court is treating the Fourth Claim as a Fifth Amendment claim by Bohannan through the
Fourteenth Amendment.  Of course, the Fifth Amendment itself applies only to violations by a federal
actor of constitutional rights against self-incrimination.  Jones v. City of Jackson, 203 F.3d 875, 880 (5th
Cir. 2000).  Griffin was not a federal actor.

> the indication of deception on the polygraph might
> result in my unsuccessful discharge from treatment.

. . . .

> 36.  I understand that I must report any violations of
>      the Treatment Plan to the Case Manager and
>      Treatment Provider.  I understand I must discuss
>      and correct any violations.

Doc. 348 at 10-11, ¶¶ 33 & 36.  On January 26, 2009, Bohannan

certified that those requirements had been read and explained to

him; and, he agreed to abide by the requirements.  Id. at 12.

        a.  Polygraphs

On March 5, 2009, Bohannan and Treatment Provider Leite

signed a Polygraph Agreement expressing Bohannan's understanding

that he was to take a polygraph to "address instant offense on the

child victim he was convicted of out of South Carolina."  Id. at

140.  The agreement made clear that Bohannan had the right to

refuse to participate in the polygraph examination by stating: "I

understand I have the right to refuse the polygraph examination."

Id., ¶ 4.  On March 24, 2009, Griffin noted that Leite stated that

Bohannan's March 23, 2009 "instant offense" polygraph results were

inconclusive and that he would be "rescheduled for another Instant

Offense polygraph within the next 30 days."  Id. at 49.  The

summary judgment record is devoid of evidence that would support

as to the polygraph examination either of the elements of a self-

incrimination violation.  The only evidence of a polygraph

                              30

examination administered to Bohannan was the one administered on
March 23, 2009.  The record shows that Bohannan was not compelled
to submit to that examination; and, there is no evidence that the
results of that examination led to, or were used in, any
subsequent prosecution.  Even if Bohannan had given incriminating
information relative to the offense for which he was convicted in
South Carolina, the doctrine of double jeopardy would have
prevented the use of that information in a further prosecution of
Bohannan.

Not only was there no constitutional violation in relation to
the polygraph examination matter, even if there had been, there is
no evidence that Griffin did anything that violated any
constitutional right of Bohannan not to be subjected to a
polygraph examination that was clearly established at that time.[12]
Thus, even if there had been a constitutional violation, Griffin
had qualified immunity for his conduct.  Moreover, such a claim
would be barred by the two-year statute of limitations.

---

[12]In 1999, a Texas appellate court held that the mere requirement as a condition of community supervision that one take a polygraph examination is insufficient to constitute an infringement of the privilege against self-incrimination.  See Ex parte Renfro, 999 S.W.2d 557, 561 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).

The Fifth Circuit has failed to disapprove of a polygraph test requirement as a condition of release for a sex offender in at least two cases.  See United States v. Winding, 817 F.3d 910, 914-15 (5th Cir. 2016); United States v. Cuneo, 554 F. App'x 313, 317-18 (5th Cir. 2014).  If the person complaining of the polygraph test requirement has the right to object to use of the results of the test against him in a criminal proceeding, his Fifth Amendment complaint is not ripe for judicial consideration before such a use has been made of the results of a test.  United States v. Johnson, 446 F.3d 272, 280 (2d Cir. 2006).

b.   The Self-Reporting Requirement

On March 29, 2009, Griffin submitted to the Texas Department
of Public Safety a CSOT notice to the Texas Department of Public
Safety Offender Violation--Warrant Request, which included among
its attachments a written statement by Bohannan regarding a
Bracelet-Gone alert which occurred on March 18, 2009.  Doc. 348 at
13-14, 52, and 163-64.  An affidavit in support of an arrest
warrant was drafted by an official of the DPS--Criminal
Investigation Division on March 31, 2009, which stated that
Bohannan had admitted to not carrying his tracking device.  Id. at
161-62.  The affiant wrote an Investigative Report regarding
Bohannan's failure to comply with civil commitment requirements,
pursuant to section 841.085 of the Texas Health & Safety Code.
Id. at 157-60.  The DPS employee caused an assistant district
attorney of Tarrant County to become involved, who concluded that
there was enough probable cause to issue a warrant for Bohannan;
after which, the DPS official visited a judge's office and
presented an arrest warrant for approval and issuance.  Id. at
158, 161-62.  On April 27, 2009, the Grand Jury of Tarrant County,
Texas returned an indictment against Bohannan for violation of his
civil commitment supervision requirements.  Id. at 344-45.

On July 22, 2010, the Beaumont Court of Appeals issued an
opinion that reversed and remanded Bohannan's January 2009 order

32

of civil commitment, In re Commitment of Bohannan, 379 S.W.3d 293
(Tex. App.--Beaumont 2010), aff'd, 388 S.W.3d 296 (Tex. 2012).   On
December 8, 2010, the District Attorney of Tarrant County, Texas
obtained a dismissal of the April 27, 2009 indictment, not on the
merits but because Bohannan's appeal from his civil commitment was
pending before the Texas Supreme Court.   Doc. 348 at 341.

The dismissal of the Tarrant County indictment was not the
end of the prosecution of Bohannan for his violations of his civil
commitment supervision requirements.   Thereafter, a grand jury in
Montgomery County, Texas returned an indictment charging him with
those violations, and a trial to a jury led to his conviction,
which was affirmed by the Beaumont Court of Appeals.   See Bohannan
v. State, No. 09-13-00090-CR, 2014 WL 5490936 at *2 (Tex. App.--
Beaumont Oct. 29, 2014, pet. filed).   There is no evidence that
any self-reporting by Bohannan led to either of the indictments.

Bohannan's prosecution in Montgomery County that led to the
life sentence he is now serving was the result of an April 24,
2011 violation report issued by the TDCJ--Parole Division
regarding Bohannan.   Id. at 187-90.   The only self-reporting
statement used during the Montgomery County trial was placed into
the record by Bohannan's counsel, not the prosecution.   Id. at

33

209, 307-10.[13]  Bohannan cannot successfully assert that a self-reporting statement made by him was used in a subsequent prosecution against him since he is the one who offered it.

It is far from clear that the self-reporting Bohannan was required to make was a constitutional violation under the then-existing circumstances.  In addition, there is no evidence that Griffin is the one who established the requirement of self-reporting, to which Bohannan agreed.  At best, from Bohannan's standpoint, Griffin simply oversaw CSOT's self-reporting requirement.  There is no evidence that would support a conclusion that Griffin's involvement in the self-reporting requirement violated any constitutional right of Bohannan to be free of self-incrimination <u>that was clearly established at that time</u>.  Thus, even if there had been a constitutional violation, Griffin had qualified immunity as to his conduct.

5.  <u>The Summary Judgment Record Is Devoid of Any Evidence That Griffin Did Anything Inappropriate in Reference to Bohannan's Legal Papers</u>

Bohannan's Fifth Claim is that Griffin seized his legal papers and caused them to be disorganized, in violation of his right of access to the courts.  Doc. 115 at 24-27, ¶¶ 141-57.  The specifics of this claim, as alleged by Bohannan, are that when

---

[13]The statement offered by Bohannan at his trial actually was an exculpatory statement.  Doc. 348 at 307-10.

Bohannan was arrested on March 31, 2009, Griffin seized all of his property, along with his case law, pleadings, notes, rough drafts, evidence, and attorney communications, and turned them over to the FWCCF officials, and that when he was permitted to have a relative pick up his seized property from those officials, his legal papers had been disorganized and mixed-in amongst the property picked up. Id. at 25, ¶¶ 143-44. To prevail on his claim, Bohannan must show that Griffin denied him access to the courts and he was prejudiced by his denial of access to the courts. See Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). That is, he must show an actual injury. See Lewis v. Casey, 518 U.S. 343, 351 (1996); Allen, 2013 WL 357614 at *5. Here, Bohannan has not shown that Griffin caused the disorganization of his legal papers or that he was denied the basic tools needed to present a nonfrivolous legal claim or defense. See Lewis, 518 U.S. at 355; Hall v. Hoke, 471 F. App'x 269, 270 (5th Cir. 2012).

Even if the assumption were to be made that the conduct of Griffin about which Bohannan complains as to his legal papers violated a constitutional right of Bohannan, there is no evidence that would support a conclusion that Griffin's involvement in the handling of Bohannan's legal papers violated any constitutional right of Bohannan that was clearly established at that time.

Thus, even if there was a constitutional violation, Griffin had qualified immunity as to his conduct.

      6.   <u>Interim Conclusion</u>

For the reasons given under this subsection B, the summary judgment evidence does not raise a reasonable inference that Griffin violated any of Bohannan's constitutional rights.  Even if there were some evidence that he had, Bohannan failed to carry his summary judgment burden of showing that Griffin engaged in conduct in violation of a constitutional right of Bohannan <u>that was clearly established at that time</u>.  In addition, some of Bohannan's § 1983 claims are barred by the two-year statute of limitations.

C.  <u>Bohannan's State Law Claims</u>

As to Bohannan's state law claims, there is no suggestion in the summary judgment record that any actions Griffin took were other than in good faith.  Pursuant to section 841.147 of the Texas Health & Safety Code, Griffin enjoyed statutory immunity from liability for his good faith conduct in providing supervision over Bohannan.  <u>Supra</u> at 13.  That statutory immunity is a sufficient basis for granting summary judgment for Griffin as to the state law claims.  However, as explained below, there are additional reasons why the state law claims are without merit.

1.  The Claims for False Arrest And/Or False Imprisonment

Bohannan's Sixth Claim is for false arrest and/or false imprisonment.  Doc 115 at 28, ¶ 183.  The elements of a claim for false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law.  Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).  One who knowingly conveys false information to the police may be held liable for a subsequent false arrest.  Id. at  508.

The summary judgment evidence would not support a finding of the essential elements against Griffin.  Bohannan's civil commitment during the months of January, February, and March 2009 was not a "willful" detention, but a lawful civil commitment pursuant to a Final Judgment and Order of Commitment.  Doc. 348 at 211-13.  The restrictions placed on Bohannan while subject to the civil commitment were pursuant to the judgment and order of commitment and CSOT policies.  There is no evidence in the summary judgment record from which an inference could be drawn that Griffin engaged in any conduct that could be considered to be a false arrest or false imprisonment of Bohannan.

2.  The Claim of Malicious Prosecution Record

Bohannan's Seventh Claim is for the state law tort of malicious prosecution.  Doc 115 at 29, ¶¶ 184-85.  To prevail, Bohannan must establish: (1) the commencement of a criminal

37

prosecution against him, (2) causation, i.e, initiation or
procurement of the action by Griffin, (3) termination of the
prosecution in Bohannan's favor, (4) Bohannan's innocence, (5) the
absence of probable cause for the proceedings, (6) malice in
filing the charge, and (7) damage to Bohannan. Richey v.
Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997). A
defendant does not procure a prosecution if the decision whether
to prosecute is left to the discretion of another person, unless
the defendant knowingly provides false information. King v.
Graham, 126 S.W.3d 75, 76 (Tex. 2003). The plaintiff must prove
that the false information caused the criminal prosecution. Id.
That is, there must be proof that the prosecutor acted based on
the false information and that without such false information the
decision to prosecute would not have been made.   Id.

There is no probative summary judgment evidence of the
existence of any of the factors that must be proved for there to
be a cause of action against Griffin for malicious prosecution in
this case.  Griffin did not commence a criminal prosecution
against Bohannan, the criminal prosecution against Bohannan was
not resolved in his favor, there is no evidence of Bohannan's
innocence, there is no evidence of absence of probable cause for
the criminal proceedings against Bohannan, and there is no
evidence that Griffin provided false information or of malice on

38

Griffin's part in relation to a criminal proceeding against Bohannan.

* * * * *

For the stated reasons, neither of Bohannan's state law claims survives a summary judgment analysis.

D.  Conclusion

For the reasons stated above, the court concludes that there is no genuine dispute as to any material fact and that Griffin is entitled to judgment as a matter of law.  Therefore, the court is ordering dismissal of all claims asserted by Bohannan against Griffin.

V.

Order

Therefore,

The court ORDERS that all claims and causes of action asserted by Bohannan against Griffin be, and are hereby, dismissed with prejudice.

SIGNED June 30, 2016.

JOHN McBRYDE
United States District Judge